UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED SPECIALTY INSURANCE
COMPANY,

Plaintiff,

-v-

PREMIER CONTRACTING OF NEW
YORK, INC., et al.,

Defendants.

17-CV-6570 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

In this declaratory-judgment action brought pursuant to 28 U.S.C. § 2201, Plaintiff

United Specialty Insurance Company ("United") seeks a declaration that an insurance policy it

issued to Defendant Premier Contracting of New York, Inc. ("Premier") does not require United

to defend or indemnify Premier or its owner, Defendant Michael T. Rich, Jr., in connection with

a New York state-court action that has been filed against Premier, Rich, and others by Defendant

Marlen J. Garcia Rodriguez. (Dkt. No. 5 at 11.) United also seeks a declaration that it is entitled

to recoup from Defendants Premier and Rich the costs it has thus far incurred in defending the

state-court action. (*Id.*; *see also* Dkt. No. 27 at 1.) United has moved for summary judgment

against all three Defendants (Dkt. No. 24), and Defendants Premier and Rich have filed a cross-

motion for summary judgment against United (Dkt. No. 37). For the following reasons, United's

motion for summary judgment is granted, and Premier and Rich's cross-motion is denied.

I.    **Background**

A.    **Factual Background**

This case asks whether Plaintiff United bears any contractual duty to defend or indemnify

Defendants Premier and Rich in a state-court tort action filed against them by Defendant Marlen

Rodriguez after the death of her brother, Jorge Alfonso Garcia Rodriguez, in a September 26,

1

2015 workplace accident (the "*Rodriguez* Action").  (*See* Dkt. No. 26-9 ¶¶ 3, 206–08.)  The

Court first details the relevant provisions of the insurance contract between United and Premier,

before describing the evidence surrounding the events of September 26, 2015, and outlining the

relevant progress of the *Rodriguez* Action.  Unless otherwise noted, the following facts are all

undisputed.[1]

### 1. The Insurance Contract

Premier, along with its executive officers and directors, is covered by a United-issued

general-liability insurance policy (the "Policy") that spans a policy period of September 30, 2014

to September 30, 2015.  (Dkt. No. 47 ¶ 1; Dkt. No. 55 ¶ 32; Dkt. No. 26-8 at 4, 23.)  As relevant

here, the Policy generally requires United to (1) pay "those sums" that Premier becomes "legally

obligated to pay as damages because of 'bodily injury'" suffered during the policy period and

(2) defend Premier against "any 'suit' seeking those damages."  (Dkt. No. 26-8 at 15.)

United's duties, though, are limited by two pertinent exclusions.  First, United has no

obligations with respect to the injuries of "'employee[s]' of [Premier]," where those injuries

"aris[e] out of and in the course of . . . [e]mployment by [Premier]; or . . . [p]erforming duties

related to the conduct of [Premier's] business."  (Dkt. No. 47 ¶ 2; Dkt. No. 26-8 at 74.)  Second,

United has no obligations with respect to the injuries of "[a]ny independent contractor or the

---

[1] Defendant Marlen Rodriguez has not specifically controverted any of the facts laid out
in the statement of undisputed facts United submitted pursuant to Local Rule 56.1 in connection
with its summary judgment motion.  (*See* Dkt. No. 54 at 2.)  She is therefore "deemed [to have]
admitted" those facts to the extent that they find support in the summary judgment record.
*Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

'employee' of any independent contractor while such independent contractor or their 'employee' is working on behalf of [Premier]."[2]  (Dkt. No. 47 ¶ 3; Dkt. No. 26-8 at 76.)

## 2.  The Events of September 26, 2015

On September 26, 2015, Jorge Rodriguez was working on a demolition project at a property owned by Leggett Avenue Property LLC ("Leggett") when he suffered a fatal fall from an elevated height.  (Dkt. No. 25-1 at 0037–0038; Dkt. No. 47 ¶ 7; Dkt. No. 26-10 ¶ 3.)

Days later, on September 29, 2015, the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") inspected the worksite where Jorge Rodriguez had fallen. (Dkt. No. 47 ¶ 10; Dkt. No. 25-1 at 0001.)  The investigator identified Premier as the employer at the site (Dkt. No. 25-1 at 0034, 0037, 0040) and determined that the accident had occurred while "Premier employees," including Jorge Rodriguez and Defendant Rich, Premier's owner and president at the time, were demolishing a metal structure (Dkt. No. 25-1 at 0037–0038; *see also* Dkt. No. 47 ¶ 11).  After the inspection, OSHA issued a citation and penalties against Premier, which OSHA characterized as the responsible "employer."  (Dkt. No. 25-1 at 0007; Dkt. No. 47 ¶ 13.)

Meanwhile, the New York State Workers' Compensation Board (the "WC Board") took a different view—at least initially—of the employment relationship between Jorge Rodriguez and Premier.  At a July 17, 2017 hearing, a WC Board judge found that Jorge Rodriguez had not been working for Premier at the time he suffered his "work related injury," but instead had been employed by Metal Depot Corp., a company that the WC Board characterized as Premier's "Sub Contractor" on the site.  (Dkt. No. 47 ¶ 19; Dkt. No. 26-12.)  Because Metal Depot was

---

[2] For the purposes of these exclusions, "employee" is defined to include "a 'leased worker,' a 'temporary worker' and a 'volunteer worker.'"  (Dkt. No. 26-8 at 32; *see also* Dkt. No. 47 ¶ 4.)

uninsured, though, the WC Board concluded that Premier, as the "General Contractor," was responsible under state law, *see* N.Y. Workers' Comp. Law § 56, for any workers' compensation payments owed to Jorge Rodriguez's estate.[3] (Dkt. No. 47 ¶¶ 19–20; Dkt. No. 26-12.)

The WC Board, though, later reversed course in an August 2, 2018 decision. (Dkt. No. 61-1.) Acknowledging that it had not had the benefit of OSHA's findings when it initially considered Jorge Rodriguez's case, it rescinded its earlier finding that Metal Depot had been the employer at the accident site and instead found that "[Premier] [was] the proper employer based on [its] direct employment of" Jorge Rodriguez. (*Id.* at 4.) Accordingly, the WC Board retroactively modified its earlier decision to reflect this changed understanding.[4] (*Id.*)

Finally, as part of this litigation, Defendant Rich has submitted a sworn statement that reflects his own view of the events of September 26, 2015. (Dkt. No. 55 ¶ 35; Dkt. No. 46.) Consistent with the OSHA and WC Board findings, Rich acknowledges that Premier had been working at the Leggett property at the time of the accident, "cleaning and removing debris and structures." (*Id.*) But to the extent that Metal Depot was also present, Rich maintains that it was neither acting as "an independent contractor of Premier" nor "working on the site on behalf of Premier." (*Id.*) In other words, Rich contends, Premier "did not contract or subcontract with Metal Depot to do any work on September 26, 2015" at the Leggett property. (*Id.*)

---

[3] A subsequent proposed decision of the WC Board listed Premier as Jorge Rodriguez's "Employer" (Dkt. No. 47 ¶ 20; Dkt. No. 26-13), but the WC Board later made clear that the "employer should [have] be[en] listed as Metal Depot Corp." (Dkt. No. 55 ¶ 34; Dkt. No. 26-14).

[4] Although the WC Board's August 2, 2018 decision did not form part of the summary judgment record at the time the parties' motions were filed, United argues that this Court may take judicial notice of the decision. (Dkt. No. 61.) Defendants have made no argument to the contrary, and the Court agrees with United that the decision represents the sort of public filing as to which judicial notice is routinely taken. *See, e.g.*, *Svensson v. Securian Life Ins. Co.*, 706 F. Supp. 2d 521, 534 n.18 (S.D.N.Y. 2010) ("The Court . . . properly can take judicial notice of [a] Workers' Compensation Board[] decision . . . .").

### 3.   The *Rodriguez* Action

On April 3, 2017, Defendant Marlen Rodriguez, as administratrix of Jorge Rodriguez's estate, filed a lawsuit against Defendants Premier and Rich, as well as Leggett, Metal Depot, and others in the Bronx County Supreme Court.[5] (Dkt. No. 47 ¶ 5; Dkt. No. 26-9.)  According to Marlen Rodriguez's complaint, each of the state-court defendants acted as Jorge Rodriguez's employer at the time of the accident and was therefore responsible for the alleged negligence and labor-law violations that purportedly caused Jorge Rodriguez's death.  (Dkt. No. 26-9 ¶¶ 197–204, 215, 224.)

Sometime after the *Rodriguez* Action was filed, United learned of the suit.  According to Premier, it notified United of the action by way of a claim notice dated April 18, 2017.  (Dkt. No. 55 ¶ 36; Dkt. No. 38-1.)  But Hal Thompson, the claims attorney handling the *Rodriguez* Action on behalf of United, has testified that United did not receive this notice right away.  (Dkt. No. 53 ¶¶ 3–7.)  Instead, Thompson contends, the notice went first to AmWINS Insurance Brokerage of California, LLC ("AmWINS"), a company United has retained to "ascertain[] and . . . report[]" facts related to claims, and that AmWINS did not transmit the notice to United until May 4, 2017.  (Dkt. No. 53 ¶¶ 5–6, 8; Dkt. No. 53-2.)  Once United did receive notice, though, Thompson, in his own account, immediately began to investigate by calling Defendant Rich.  (Dkt. No. 29 ¶ 6.)  Thompson's contemporaneous notes of this May 4, 2017 call indicate that

---

[5] There is some confusion over the date of Marlen Rodriguez's complaint.  The complaint is dated March 26, 2015 (Dkt. No. 26-9 at 24), but that date is clearly incorrect, given that Jorge Rodriguez's death did not occur until September 2015, and the summons accompanying the complaint is dated March 26, 2017 (Dkt. No. 26-9 at 2).  In any event, the Bronx County Clerk has stamped both summons and complaint with a filing date of April 3, 2017 (Dkt. No. 26-9 at 2, 4), and no party suggests that the precise date of the filing is material to this litigation.

Rich admitted that Jorge Rodriguez had been working for Premier on the day of the accident. (Dkt. No. 29 ¶¶ 6–8; Dkt. Nos. 29-1, 29-2.)

Once Thompson had concluded his investigation, United sent Premier a May 17, 2017 letter agreeing to defend the *Rodriguez* Action under a partial disclaimer of coverage. (Dkt. No. 47 ¶ 21; Dkt. No. 53 ¶¶ 9–10; Dkt. No. 53-3.) Specifically, the letter noted Rich's admission to Thompson "that Mr. [Jorge] Rodriguez was an employee of Premier" (Dkt. No. 53-3 at 1) and went on to state United's position that "[i]f [Jorge] Rodriguez was an employee who was working on behalf of Premier at the time of the accident," neither Premier nor "any other individual or entity claiming coverage under [the Policy]" enjoyed any "coverage for the Rodriguez accident" (Dkt. No. 47 ¶ 22; Dkt. No. 53-3 at 4). In the alternative, the letter also stated that "[i]f [Jorge] Rodriguez were determined to be an employee of an independent contractor hired by Premier, then there would be no coverage for Premier or any other individual or entity claiming coverage under [the Policy]." (Dkt. No. 47 ¶ 23; Dkt. No. 53-3 at 5.) Thus, although United agreed to defend the *Rodriguez* Action, it "reserv[ed] its right to withdraw from providing coverage . . . and to seek reimbursement for costs incurred should it be determined there is no coverage." (Dkt. No. 53-3 at 11.)

Thereafter, on June 16, 2017, United sent Premier a follow-up letter "clarify[ing] [its] coverage position" as to the *Rodriguez* Action. (Dkt. No. 38-2 at 2.) In particular, United made clear that it would not provide a defense for *every* state-court defendant but instead would do so for only those defendants, including Defendant Rich, who were Premier employees and who could therefore potentially invoke the Policy. (*Id.*) The letter reiterated, though, that United's "coverage position as set forth" in the earlier, May 17, 2017 letter "remain[ed] unchanged." (*Id.*)

Having thus staked out its position, United began to defend the *Rodriguez* Action on behalf of Premier and Rich. On June 27, 2017, United's chosen counsel filed an answer to the complaint, in which it was admitted that Premier had been Jorge Rodriguez's employer at the time of the accident. (Dkt. No. 47 ¶ 9; Dkt. No. 26-11 ¶ 29; *see also* Dkt. No. 26-9 ¶ 199; Dkt. No. 56 at 12.) But Premier soon grew wary that United's reservation of rights could create a conflict of interest, and on October 5, 2017, Premier, through its own chosen counsel, requested that the counsel chosen by United cease work on the *Rodriguez* Action. (Dkt. No. 55 ¶ 39; Dkt. No. 38-3.) On October 18, 2017, United agreed to honor this request by withdrawing its counsel from the *Rodriguez* Action. (Dkt. No. 55 ¶ 40; Dkt. No. 38-4.)

## B. Procedural History

United initiated this action on August 29, 2017, by filing a complaint against Defendants Premier, Rich, and Marlen Rodriguez.[6] (Dkt. No. 1.) According to the complaint, the Policy does not entitle Defendants to have United provide a defense or indemnification in the *Rodriguez* Action, and United seeks a declaration to that effect from this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. (Dkt. No. 5 at 11.) In addition, United asks this Court to declare that United is entitled to recoup from Defendants Premier and Rich the costs it has incurred in defending the *Rodriguez* Action thus far. (*Id.*; *see also* Dkt. No. 27 at 1.)

Defendants Premier and Rich answered the complaint on November 27, 2017 (Dkt. No. 13), and Defendant Marlen Rodriguez answered the complaint and interposed crossclaims against Premier and Rich on December 15, 2017 (Dkt. No. 17). Broadly speaking, these crossclaims seek indemnification from Premier and Rich for any liability Marlen Rodriguez

---

[6] United also initially sought to proceed against Luis and Carmine Sanzo, both of whom are named as defendants in the *Rodriguez* Action. (*See* Dkt. Nos. 5, 26-9.) All parties, however, have since voluntarily stipulated to the Sanzos' dismissal from this litigation. (Dkt. No. 44.)

might incur as a result of United's declaratory-judgment claims. (Dkt. No. 17 ¶¶ 60–64.) Premier and Rich answered the crossclaims on January 8, 2018 (Dkt. No. 18), and the case thereafter proceeded to discovery (*see* Dkt. No. 20).

On April 26, 2018, about a month before fact discovery was due to end, United moved for summary judgment.[7] (Dkt. No. 23.) On May 17, 2018, Defendants opposed United's motion (Dkt. Nos. 36, 41), and Defendants Premier and Rich filed a cross-motion for summary judgment against United, seeking a declaration that United is obliged to defend them in the *Rodriguez* Action and seeking reimbursement from United for the costs they have incurred in defending the instant suit (Dkt. No. 37). Briefing is complete on United's motion and Premier and Rich's cross-motion (Dkt. Nos. 54, 56–57), and this Court now considers the merits of those motions.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56, a summary judgment motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In considering such a motion, the Court "must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). If the evidence, so construed, is such that "a fair-minded jury could return a verdict for the [non-moving party]," then summary judgment is inappropriate. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). But once the movant has carried its "initial burden . . . of demonstrating the absence of a genuine issue of material fact," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986), it falls to the non-moving party

---

[7] United also sought a stay of discovery pending resolution of its summary judgment motion. (Dkt. No. 27 at 23–25.) This Court granted the requested stay, but only after the window for fact discovery had already closed. (Dkt. No. 60.)

to "do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586. Instead, that party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

## III. Discussion

United argues that it is entitled to summary judgment because, on any reasonable view of the record, the *Rodriguez* Action falls into one of the Policy's coverage exclusions. (Dkt. No. 27 at 13–20.) And, United maintains, because the May 17, 2017 letter in which it initially agreed to defend Premier and Rich reserved its recoupment rights, it is entitled under New York law[8] to recoup the defense costs it has incurred in connection with that action. (Dkt. No. 27 at 22–23.)

Defendants Premier and Rich, however, argue that *they* are the ones entitled to summary judgment. In their view, no cited coverage exclusion applies to the *Rodriguez* Action. (Dkt. No. 48 at 12–15.) Furthermore, they contend, even if an exclusion *did* apply, United has waived its opportunity to disclaim coverage because its efforts to do so were untimely as a matter of law. (Dkt. No. 48 at 11–12.) And to top it all off, they conclude, United has cast them in a defensive posture by filing the instant litigation and so bears an obligation under the Policy to indemnify them for their costs in defending this suit. (Dkt. No. 48 at 15–16.)

Defendant Marlen Rodriguez, for her part, makes a more limited argument. She takes no position on whether the undisputed facts establish that a coverage exclusion applies (or does not apply). Instead, she simply argues that it is impossible on the basis of the present record to

---

[8] Defendants Premier and Rich, as well as United, expressly take the view that New York law governs the present dispute. (Dkt. No. 27 at 22; Dkt. No. 48 at 10.) Defendant Marlen Rodriguez offers no contrary view. The Court therefore follows the parties in applying New York's substantive law. *See, e.g.*, *Sahu v. Union Carbide Corp.*, No. 04 Civ. 8825, 2012 WL 2422757, at *4 (S.D.N.Y. June 26, 2012) (applying New York law where no party raised any objection to its presumed applicability).

conclude as a matter of law that United's disclaimer letter was timely (or was untimely) and that summary judgment for any party is therefore inappropriate at this stage. (Dkt. No. 36 at 2–5.)

The Court first considers whether the undisputed facts establish as a matter of law that the *Rodriguez* Action falls into—or does not fall into—a coverage exclusion. The Court next asks whether the undisputed facts establish as a matter of law that United timely disclaimed—or failed to timely disclaim—coverage. Finally, the Court turns to the question of recoupment.

### A.      The Policy's Coverage Exclusions

As explained above, the Policy presumptively requires United to defend or indemnify Premier and Rich in the *Rodriguez* Action unless it can be determined that Jorge Rodriguez was, at the time of his accident, working as an "'employee' of [Premier]" (Dkt. No. 26-8 at 74) or as "the 'employee' of any independent contractor" doing work for Premier (Dkt. No. 26-8 at 76).

Defendants Premier and Rich contend that the summary judgment record establishes conclusively that neither exception applies. First, they argue, the WC Board—at least initially—found that Jorge Rodriguez was an employee of Metal Depot, not Premier, at the time of his accident. (*See* Dkt. No. 48 at 12–14; Dkt. No. 26-12.) And, they go on, Rich has attested in a sworn statement that Metal Depot was not working as Premier's independent contractor at the time of Jorge Rodriguez's fall. (*See* Dkt. No. 48 at 14–15; Dkt. No. 46.)

The Court is wholly unpersuaded. As for the identity of Jorge Rodriguez's employer, Premier and Rich entirely disregard overwhelming evidence that the employer was Premier— evidence that includes not only OSHA's findings (Dkt. No. 25-1 at 0007) and Hal Thompson's contemporaneous memorialization of Rich's own alleged admissions (Dkt. Nos. 29-1, 29-2), but also the WC Board's later disavowal of the very finding that forms the sole basis for Premier and

Rich's contention that Jorge Rodriguez was an employee of Metal Depot (Dkt. No. 61-1).[9] And as for the relationship between Premier and Metal Depot, Premier and Rich conveniently forget that the very WC Board opinion they otherwise describe as "binding" (Dkt. No. 48 at 13) found that Metal Depot was Premier's "Sub Contractor" at the relevant time (Dkt. No. 26-12). At a minimum, then, a reasonable juror could resolve either of these points in United's favor.

The Court therefore next considers United's position that, beyond not being entitled to summary judgment, Premier and Rich have failed even to raise a genuine factual dispute that is material to the question of whether the *Rodriguez* Action falls into a coverage exclusion. First, United argues that there is no genuine dispute over whether Jorge Rodriguez was working as Premier's employee at the time of his accident. (Dkt. No. 27 at 13–17). Second, United argues that even if a reasonable juror *could* find that Jorge Rodriguez was an employee of Metal Depot at the relevant time, then there is no genuine dispute over whether Metal Depot was working as Premier's independent contractor at that time. (Dkt. No. 27 at 17–20.)

The Court agrees with United on the first point and so need not consider the second. As explained above, virtually every piece of evidence in the record that identifies Jorge Rodriguez's employer identifies it as Premier. And the lone exception—the initial WC Board opinion—has since been overturned. Certainly, that initial opinion may well have been based on evidence that could lead a reasonable juror to conclude that Jorge Rodriguez's employer was Metal Depot.

---

[9] In addition to this evidence, United also points out that Premier and Rich admitted in their answer to the complaint in the *Rodriguez* Action that Premier was Jorge Rodriguez's employer at the relevant time. (*See* Dkt. No. 56 at 1; Dkt. No. 26-11 ¶ 29.) Premier and Rich respond that this admission, interposed by United's "hand selected counsel," is "just further proof of [United's] bad faith." (Dkt. No. 48 at 14.) But because the Court finds it unnecessary to rely on Premier and Rich's purported state-court admission, the Court declines to decide how, if at all, the alleged conflict of interest—or United's alleged failure to inform Premier and Rich that they had the right to reject United's chosen counsel (*see* Dkt. No. 48 at 14; Dkt. No. 56 at 9–10)—bears on the evidentiary value of the admission.

But Premier and Rich have not produced any such underlying evidence as part of this litigation. Indeed, the only affirmative evidence Premier and Rich have introduced regarding the events of September 26, 2015—Rich's sworn statement—is conspicuously silent on the identity of Jorge Rodriguez's employer. Nor does Rich's statement dispute Hal Thompson's testimony that Rich informed Thompson in a May 4, 2017 phone call that "Premier had been Rodriguez's employer on the date of Rodriguez's accident." (Dkt. No. 29 ¶ 6.) Given that Premier and Rich, as the alleged employers, are in a unique position to deny the existence of an employment relationship between Jorge Rodriguez and Premier if no such relationship in fact existed, their failure to do so is striking. *Cf. In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 93 n.25 (2d Cir. 2016) (acknowledging that although "a court may not draw negative inferences against a nonmoving party on a summary judgment motion," that party's failure to offer testimony that would support its position can leave the movant's contrary showing undisputed).

In sum, then, the Court concludes that Jorge Rodriguez's status as Premier's employee at the time of his accident is not subject to genuine dispute. Consequently, the *Rodriguez* Action falls into a coverage exclusion, and the Policy, without more, therefore does not require United to defend or indemnify Premier and Rich in connection with that action.

### B.   United's Disclaimer of Coverage

As the Court has now concluded, no genuine dispute exists as to whether the *Rodriguez* Action falls within a coverage exclusion. But United could still be obligated to defend or indemnify Defendants Premier and Rich if it failed to timely disclaim coverage. Under New York law, where an insurer seeks to deny coverage under a New York–issued policy for death or bodily injury arising out of an accident occurring in New York, the insurer "shall give written notice as soon as is reasonably possible of such . . . denial of coverage to the insured and the injured person or any other claimant." N.Y. Ins. Law § 3420(d)(2); *see also Markevics v. Liberty*

*Mut. Ins. Co.*, 97 N.Y.2d 646, 648–49 (2001) ("[A] timely disclaimer . . . is required when a claim falls within the coverage terms but is denied based on a policy exclusion.").

An insurer's duty to provide a timely disclaimer begins to run "from the time that the insurer has sufficient information to disclaim coverage in good faith." *Webster ex rel. Webster v. Mt. Vernon Fire Ins. Co.*, 368 F.3d 209, 216 (2d Cir. 2004). But an insurer may not dawdle in acquiring such information: any investigation into a notice of claim must be "prompt, thorough, and diligent." *Liberty Ins. Underwriters Inc. v. Great Am. Ins. Co.*, No. 09 Civ. 4912, 2010 WL 3629470, at *9 (S.D.N.Y. Sept. 17, 2010) (quoting *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir. 2004)). Given the context-specific nature of an investigation's reasonableness, "timeliness almost always presents a factual question, requiring an assessment of all relevant circumstances surrounding a particular disclaimer." *Continental Cas. Co. v. Stradford*, 11 N.Y.3d 443, 449 (2008).

But although "cases in which the reasonableness of an insurer's delay may be decided as a matter of law are exceptional," *id.*, courts have adopted a rule of thumb that "disclaimers made within 30 days of notice are treated as timely, whereas disclaimers beyond the 30-day point are generally treated as untimely" unless the insurer establishes a suitable justification, *Century Sur. Co. v. EM Windsor Constr. Inc.*, No. 16 Civ. 4196, 2017 WL 5952706, at *9 (S.D.N.Y. Nov. 29, 2017). *Compare, e.g.*, *Liberty Ins. Underwriters*, 2010 WL 3629470, at *9 (holding an insurer's disclaimer issued twenty-eight days after its receipt of a claim notice "reasonably timely as a matter of law"), *with, e.g.*, *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 70 (2003) (holding an unexplained delay of forty-eight days following receipt of a claim notice to be "unreasonable as a matter of law"). Of course, this practice does not represent a "bright-line rule," *Erie Painting & Maint., Inc. v. Ill. Union Ins. Co.*, 876 F. Supp. 2d 222, 231 (W.D.N.Y.

13

2012), such that a one-month delay is reasonable even in the absence of evidence that the insurer conducted any investigation at all, *see id.* at 232.  But where an insurer *does* need to "mount[] an investigation to determine whether it could disclaim coverage," the Second Circuit has deemed delays of up to twenty-two days "reasonable as a matter of law." *Webster*, 368 F.3d at 217.

Here, Defendants Premier and Rich first submitted their notice of claim on April 18, 2017.  (Dkt. No. 55 ¶ 36; Dkt. No. 38-1.)  The evidence shows that AmWINS, United's insurance broker, forwarded that notice to United on May 4, 2017.  (Dkt. No. 53 ¶¶ 5–8; Dkt. No. 53-2.)  United then issued its disclaimer on May 17, 2017, twenty-nine days after the claim notice was submitted (Dkt. No. 53-3), and followed up with a letter "clarify[ing] [its] coverage position" on June 16, 2017, fifty-nine days after the claim notice was submitted (Dkt. No. 38-2).

Defendants Premier and Rich argue that this chain of events establishes that United's disclaimer was untimely as a matter of law for two reasons.  (Dkt. No. 48 at 11–12.)  First, citing to *West 16th Street Tenants Corp. v. Public Service Mutual Insurance Co.*, 736 N.Y.S.2d 34 (App. Div. 1st Dep't 2002), they claim that delays "as short as 30 days . . . render disclaimers untimely and invalid," and that a delay of twenty-nine days is presumably just as bad (Dkt. No. 48 at 12).  But *West 16th Street Tenants Corp.*, which held a thirty-day delay in disclaiming coverage to be "unreasonable as a matter of law," concerned a situation in which the basis for disclaimer "was obvious from the face of the notice of claim," such that the insurer "had no need to conduct an investigation before determining whether to disclaim." *W. 16th St. Tenants Corp.*, 736 N.Y.S.2d at 35.  Given United's need in this case to look into the employment relationship between Jorge Rodriguez and Premier, *West 16th Street Tenants Corp.* does not govern here.

Second, Defendants Premier and Rich argue that even if the May 17, 2017 letter could be deemed timely, that letter disclaimed coverage only with respect to Premier.  (Dkt. No. 48 at 11.)

14

In Premier and Rich's view, it was not until the June 16, 2017 letter that United first disclaimed coverage as to Rich as well.  (*Id.*)  This argument, though, is belied by the letters themselves. The May 17, 2017 letter—which, indeed, was addressed to Rich—explicitly stated that United disclaimed coverage both as to Premier and as to "any other individual or entity that may claim coverage under [the Policy]."  (Dkt. No. 53-3 at 4.)  The June 16, 2017 letter, in contrast, did not purport to disclaim coverage with respect to Rich above and beyond what the May 17, 2017 letter had already done.  Quite to the contrary, the June 16, 2017 letter clarified that the Policy "*does* afford coverage" to Rich, subject, of course, to the "coverage position . . . set forth in [the May 17, 2017] letter," which "remain[ed] unchanged."  (Dkt. No. 38-2 at 2 (emphasis added).)

Accordingly, the Court finds no basis for concluding that United's disclaimer, whether as to both Premier and Rich or as to Rich alone, was untimely as a matter of law.

The Court turns next to United's inverse claim that the undisputed facts actually establish as a matter of law that the May 17, 2017 letter *was* timely.  (Dkt. No. 54 at 2–6.)  First and foremost, the parties dispute whether the timeliness of United's disclaimer must be measured from April 18, 2017, when AmWINS received Premier and Rich's notice of claim, or from May 4, 2017, when United allegedly first received that notice from AmWINS.  (Dkt. No. 56 at 6–7; Dkt. No. 57 at 5–6.)  But even assuming, favorably to Defendants, that April 18, 2017, is the relevant date, United's May 17, 2017 disclaimer nonetheless falls within the thirty-day window that courts routinely hold, as a matter of law, to be a reasonable timeframe for conducting an investigation.  *See Century Sur. Co.*, 2017 WL 5952706, at *9.  And although Defendants Premier and Rich voice skepticism regarding Hal Thompson's sworn statement that he needed until May 16, 2017, the day before United sent its disclaimer, to finish investigating

(*see* Dkt. No. 53 ¶ 10; Dkt. No. 57 at 6), they do no more than raise the sort of "metaphysical doubt" that is insufficient to create a genuine factual dispute, *Matsushita*, 475 U.S. at 586.

Defendant Marlen Rodriguez maintains, however, that the lack of evidence rebutting United's account of its own investigation should not be held against Defendants. This is because, she argues, United filed its summary judgment motion prior to the close of discovery. (Dkt. No. 36 at 4–5.) Moreover, according to a status letter submitted by the parties on May 29, 2018, United refused during discovery to turn over certain claim files that might, Defendants believe, contain evidence that would create a factual dispute as to the reasonableness of United's investigation. (Dkt. No. 51 at 4–5.) But Defendants overlook the fact that they did not bring this discovery dispute to the Court's attention until after the May 21, 2018 close of fact discovery.[10] (*See* Dkt. No. 20.) Nor at any point prior to the close of fact discovery did Defendants seek an extension of the discovery deadlines or ask that the Court defer resolution of United's motion. Defendants cannot now rely on their own inaction during discovery as a basis for defeating United's motion for summary judgment.

Finally, Defendant Marlen Rodriguez speculates that even if the undisputed facts show that United disclaimed liability within a reasonable time after learning of the *Rodriguez* Action, United has presented no evidence as to when it first learned of the underlying September 26, 2015 accident. (Dkt. No. 36 at 4.) But Hal Thompson's sworn testimony maintains that United "first learned about Rodriguez's accident" when it received Premier and Rich's notice of claim from AmWINS on May 4, 2017 (Dkt. No. 53 ¶ 7), and no Defendant points to any evidence that would subject Thompson's statement to genuine dispute.

---

[10] Although United had, prior to the close of fact discovery, requested that discovery be stayed pending resolution of its summary judgment motion (Dkt. No. 24), the Court did not rule on that motion until after the time for fact discovery had already ended.

All told, then, the undisputed facts establish that United disclaimed liability no more than twenty-nine days after it first learned of the *Rodriguez* Action and the underlying accident, and that it spent that time processing and investigating Premier and Rich's claim. Because courts have concluded as a matter of law that thirty days is a reasonable amount of time within which to perform those tasks, United has established that its disclaimer was timely as a matter of law. Therefore, because the undisputed facts establish that the *Rodriguez* Action falls into one of the Policy's coverage exclusions and that United disclaimed coverage in a timely manner pursuant to that exclusion, the Court concludes that United is entitled to summary judgment on its claim that it bears no defense or indemnification obligations in connection with the *Rodriguez* Action.[11]

## C.     Recoupment

Where an insurer advances defense expenses to its insured but "explicitly advise[s] the named insured that it [is] reserving its right to seek reimbursement against the named insured in the event it is determined the insurer ha[s] no defense obligation, and the insured [does] not object to the reservation," *Maxum Indem. Co. v. VLK Constr., Inc.*, No. 14 Civ. 1616, 2016 WL 4703654, at *6 (E.D.N.Y. Sept. 8, 2016) (quoting *Century Sur. Co. v. Franchise Contractors, LLC*, No. 14 Civ. 277, 2016 WL 1030134, at *5 (S.D.N.Y. Mar. 10, 2016)), New York law allows the insurer to recoup those expenses "in the event it is ultimately determined no coverage was afforded," *id.* (quoting *Axis Reinsurance Co. v. Bennett*, No. 07 Civ. 7924, 2008 WL 2600034, at *2 (S.D.N.Y. June 27, 2008)).

Here, the Court has concluded that United has no defense obligations in connection with the *Rodriguez* Action. Further, United's May 17, 2017 disclaimer letter to Premier and Rich

---

[11] In light of this conclusion, the Court rejects Defendant Premier and Rich's claim that United is required to indemnify them for the expenses they have incurred in connection with the instant suit.

explicitly "reserv[ed] [United's] right . . . to seek reimbursement for costs incurred should it be determined there is no coverage" for the *Rodriguez* Action. (Dkt. No. 53-3 at 11.) Finally, Premier and Rich have presented no evidence that they "expressly refuse[d] to consent to the reservation." *Maxum Indem. Co. v. A One Testing Labs., Inc.*, 150 F. Supp. 3d 278, 284 (S.D.N.Y. 2015). Of course, Premier and Rich argue that, in the context of the instant litigation, they *now* object to United's reservation. (Dkt. No. 48 at 16–17.) Unsurprisingly, though, they offer no legal authority that would suggest that an insured may sit silently while an insurer incurs expenses on behalf of the insured under a reservation of rights and then blindside the insurer with an effective objection only after the insurer has run up a considerable bill.

Accordingly, the Court concludes that United is entitled to summary judgment on its claim that it has a right to recoup the defense expenses it has thus far incurred in connection with the *Rodriguez* Action.

## IV.     Conclusion

For the foregoing reasons, United's motion for summary judgment is GRANTED and Defendants Premier and Rich's cross-motion for summary judgment is DENIED.

Because the Court's resolution of the cross-motions for summary judgment renders moot Defendant Marlen Rodriguez's crossclaims, those crossclaims are dismissed.

The Clerk of Court is directed to close the motion at Docket Number 37 and to close this case.

SO ORDERED.

Dated: March 21, 2019
        New York, New York

_____
                J. PAUL OETKEN
          United States District Judge